ADAMS, (BROWN v.)

[See Brown v. Adams, Case No. 1,986.]

---

## Case No. 49.

### ADAMS v. BURKE et al.

[3 Sawy. 415.][1]

Circuit Court, D. Oregon.   Aug. 20, 1875.

PUBLIC LANDS — GRANT IN PRAESENTI — OREGON DONATION ACT—ADVERSE POSSESSION.

1. The donation act is a grant in praesenti to the settler thereunder, subject to the conditions of residence and cultivation required by the act; and until such conditions are performed the estate granted is defeasible, but when performed it becomes indefeasible.

[Cited in Wythe v. Haskell, Case No. 18,118; Bear v. Luse, Id. 1179. Distinguished in Maynard v Hill, 8 Sup. Ct. Rep. 731.]

[See note at end of case.]

---

[1][Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

2. Upon the receipt and acceptance by the commissioner of the register and receiver's certificate, the right of a settler to a patent is perfect; but such patent does not pass the estate, that having been done by the act, and is only record evidence furnished by the government for the security of the donee, of the settlement and performance of the conditions annexed to the grant, and the partition of the same, where the settler is married, between himself and wife.

[See note at end of case.]

3. Upon the death of a settler or his wife intestate, after compliance with the act and before patent issues, the estate of the intestate vests as directed by the act in the survivor and children or heirs of the deceased, but, quere? Do the persons in whom it vests take a new title from the government or only succeed under the act to the title of the intestate?

4. To render a possession adverse it must be hostile in its origin and hostile in its continuance.

[Cited in Stanley v. Schwalby, 13 Sup. Ct. Rep. 424, 147 U. S. 508.]

5. The party through whom the defendants derive whatever interest they possess in this case went into possession asserting that the title was in the United States, and the defendants during their possession, commenced a suit in one of the state courts to compel a transfer to them of the legal title to the premises from the heirs of one Lownsdale, to whom a patent of the United States had been issued, and through whom the plaintiff traces his title, asserting in a verified complaint that the legal title was in such heirs and had been acquired by them by alleged settlement and the patent of the United States, and setting forth sundry acts and agreements by which it was contended that the heirs were bound to hold the title in trust for the defendants, and asking a decree that the heirs be declared trustees for their benefit; Held, that the complaint in that action, being verified, was an admission that the defendants did not hold the premises by a claim of title hostile to the title of the plaintiff, but with a recognition of that title in another, and an assertion of an equitable right to have that title transferred to them, and that there was therefore no such adverse possession by them as was contemplated by the statute.

[Cited in Adams v. Lewis, Case No. 60; Stanley v. Schwalby, 13 Sup. Ct. Rep. 424, 147 U. S. 508.]

At law. Action to recover land, tried by the court without a jury. [Judgment for plaintiff.]

E. C. Bronaugh, for plaintiff.

Charles B. Upton and W. T. Trimble, for defendants.

FIELD, Circuit Justice. Two actions of ejectment were brought by the plaintiff, each for a portion of the demanded premises, against the tenants in possession. The landlords having appeared in both, the actions have been consolidated. The premises constitute the west half of lot four of block eighteen in the city of Portland. The plaintiff deraigns title to them from the children and grandchildren of Daniel H. Lownsdale, who had in September, 1852, by previous settlement upon land which includes the premises, and continued residence thereon, and cultivation, acquired a right to a patent of the United States under the act of congress

of September 29, 1850, [9 Stat. 496,] known as the "Donation Act." The defendants controvert the claim of title by the plaintiff. and assert an adverse possession of twenty years under claim and color of title, in bar of the action.

By the fourth section of the donation act a grant of land was made to every white settler or occupant of the public lands in Oregon above the age of eighteen years, who was a citizen of the United States, or had made a declaration according to law of his intention to become a citizen, or should make such declaration on or before the first day of December, 1851, and who was at the time a resident of the territory, or might become a resident on or before the first day of December, 1850, and who should reside upon and cultivate the land for four consecutive years and otherwise conform to the provisions of the act. The grant was of 320 acres of land if the settler or occupant was a single man, but if a married man, or if a married man, or if he should become a married man within a year from the first of December, 1850, then the grant was of 640 acres, one-half to himself and the other half to his wife to be held by her in her own right. The surveyor-general of the United States was required to designate the part of the land thus granted inuring to the husband and the part inuring to the wife. and enter the same on the records of his office; and the act declares that in all cases where such married persons complied with the provisions of the act so as to entitle them to the grant, whether under the preceding provisional government or subsequently, and either should die before the patent issued, the survivor and children or heirs of the deceased should be entitled to his or her share or interest in equal proportions, except where the deceased should otherwise have disposed of the same by will.

At the time of the passage of this act, Daniel H. Lownsdale was of the class of persons designated who were entitled to the benefit of its provisions; he was a settler in Oregon, and had been for years, and he was a citizen of the United States; and he was either a married man or became so within a year from the first of December, 1850. He had settled upon land now covering a large portion of the city of Portland, and he at once became a claimant under the act dating the commencement of his settlement on the twenty-second of September, 1848. This settlement was followed by his continued residence and cultivation up to September 22, 1852, the period of four years prescribed by the act. Due proof of this residence and cultivation was made to the surveyor-general and by him the land was assigned to the husband and wife in equal proportions, the east half to the husband, and the west half to the wife. The premises in controversy lie within the portion assigned to the husband.

In October, 1860, a patent certificate was issued in favor of Lownsdale and wife by the register and receiver of the land office in Oregon, in the usual form, and containing recitals of the claim asserted by Lownsdale of a donation right, and that proof had been made of the commencement of the settlement, and of the subsequent continued residence and cultivation required by the act. The certificate, accompanied by evidence of the facts recited, was forwarded to the commissioner of the general land office at Washington in order that a patent might issue thereon, if no valid objection was made to it No objection, so far as we are informed. was made to the certificate, or to the sufficiency of the accompanying evidence, and in June, 1865, a patent of the United States was issued to Lownsdale and wife, in terms granting to them the property claimed, the east half to Lownsdale and the west half to his wife. Both husband and wife died intestate, before the patent issued; the wife in April, 1854; the husband in May, 1862.

Where, as in the present case, there had been a previous settlement, the act of congress vested the title in the settler immediately upon its passage. The act is a grant in praesenti; its language is, that there "shall be and hereby is granted" to the settler or occupant, language which imports an immediate transfer of the interest of the grantor, not a promise to transfer that interest at a future period. But it is a grant subject to the conditions of continued residence and cultivation of four years from the settlement: if these conditions had not already been performed on the passage of the act they were to be performed subsequently. Until performed, the estate granted was defeasible; when performed, the estate became indefeasible.

When the certificate of the register and receiver was received by the commissioner, and accepted by him as satisfactory, the right of Lownsdale and of his wife to a patent was perfected. The estate as already observed passed by the act; the patent which the United States subsequently issued was record evidence on the part of the government, furnished for the security and protection of the donees or their successors in interest, of the settlement of Lownsdale and of the performance of the conditions annexed to the grant, and of the due assignment to him and to his wife of their respective portions; but it had no other or greater operation upon the title. "In the legislation of congress," said the supreme court in a recent case, "a patent has a double operation. It is a conveyance by the government when the government has any interest to convey, but where it is issued upon the confirmation of a claim of a previously existing title, it is documentary evidence, having the dignity of a record, of the existence of that title, or of such equities respecting the claim as justify its recognition

and confirmation. The instrument is not the less efficacious as a record of previously existing rights, because it also embodies words of release or transfer from the government." Langdeau v. Hanes, 21 Wall. [88 U. S.] 529.

Upon the death of the wife in 1854, intestate, she not having previously transferred her interest, her portion of the land—that is, the west half—vested under the act of congress in the surviving husband and her children in equal shares. No patent had then issued, and the act declares who shall in such case succeed to the estate of the deceased. Upon the death of the husband intestate, he not having previously disposed of his interest, his portion of the land—that is, the east half—vested in his children, under the act, in equal shares. The estate took this course by the express direction of the act.

But whether the children thus took a new title from the government, or only succeeded under the statute to such title as the wife in the one instance, and the husband in the other, had acquired, is one of the questions controverted in the case. The plaintiff contends that the children took a new title as donees under the statute on the death of their father, in May, 1862; and if this be the case, there can of course be no adverse possession sufficiently prolonged to bar the action. The statute requires such possession to be continued for twenty years. The defendants contend that the children only succeeded to the estate of the deceased, and that an adverse possession commenced against him whilst living can be tacked on to the subsequent adverse holding, so as to make the statutory period of twenty years. It is not important for the decision of the present case which view of this question be correct. As the district judge and myself have differed in opinion, in another case, upon the question whether a conveyance by a donation claimant after he had acquired by his settlement, residence, and cultivation, a right to a patent and, before the patent was issued passes the estate (a decision of which would determine the question here involved), and that case will be certified to the supreme court, I refrain from expressing an opinion upon the point raised here. This case, as already said, can be determined without passing upon that point.

The defendants show a continuous possession of the premises, open and notorious, since 1851, but that possession has not been, in my judgment, during this period, or for twenty years, adverse to the title of the plaintiff. To render a possession adverse it must be hostile in its origin, and hostile in its continuance. The entry upon the premises must be made, and the possession must be accompanied with the claim of title against the whole world. In other words, the occupant must assert ownership in himself. An entry by permission of another,

or, with an admission of another's title, will not set the statute running, and the recognition of another's title after the statute has commenced running, at any time within the twenty years, no matter for how brief a period, will destroy the continuity of the hostile possession, and avoid the bar of the statute.

In the present case Pettygrove, the party through whom the defendants derive whatever interest they possess, went into possession · not claiming title in himself, but asserting, as was the fact, that the title was in the United States; and neither he nor his grantees have at any time since pretended that the fact was otherwise, or that they have ever acquired that title. On the contrary, the defendants, one of whom, · Burke, has occupied the premises by himself or tenants for the greater part of the last twenty years, instituted legal proceedings as late as January, 1871, in one of the state courts to compel a transfer to them of the legal title to the premises from the heirs of Daniel H. Lownsdale, asserting in the complaint in the case verified by the oath of Burke, that such legal title was in the heirs, and had been acquired by their ancestor, Daniel H. Lownsdale, by the proceedings taken upon his alleged settlement and the patent of the United States; and setting forth sundry acts and agreements by which they contended that the heirs were bound to hold the title in trust for them, and asking a decree that the heirs might be declared trustees for their benefit.

That complaint is an admission of the highest character—a sworn statement—that the defendants did not hold the premises by a claim of title hostile to the title of the plaintiff, but with a recognition of that title, and an assertion of some equitable right to have that title transferred to them. It is too plain for argument that there was here no such adverse possession of the premises as is contemplated by the statute. If the defendants have any equities which should control the legal title, they must seek to enforce them in some appropriate form. The state court, it would seem, did not think they had any. Be that as it may, a possession with a claim of an equitable right to another's legal title to the premises, is not a possession adverse to the existence of that title; but a possession with a continued recognition of its validity.

A general finding must be had for the plaintiff, and judgment entered thereon for the possession of the premises, with costs.

[NOTE. In Hall v. Russell, 101 U. S. 503, it was held that, under section 4 of the donation act, "there was no grant of the land to a settler until he had qualified himself to take as grantee by completing his four years of residence and cultivation, and performing such other acts in the meantime as the statute required in order to protect his claim and keep it alive. Down to that time he was an authorized settler on the public lands, but not a grantee. His rights in the land were statu-

tory only, and cannot be extended beyond the just interpretation of the language congress has used to make known its will."]